(C. D. 312)

Import & Export Service Co. et al. *v.* United States

United States Customs Court, Second Division

(Decided April 5, 1940)

*Harper & Harper (Abraham Gottfried* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney),
for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at various ports, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of upholstery nails. On those composed of two or more pieces of iron or steel, duty was levied under the provision in paragraph 331 of the Tariff Act of 1930 for "upholsterers' nails * * * of two or more pieces of iron or steel, finished or unfinished, 3 cents per pound," and the Presidential proclamation promulgated as T. D. 46051, 62 Treas. Dec. 676, which became effective on January 13, 1933, in accordance with which the above rate of 3 cents per pound was increased to 4½ cents per pound.

On the imported upholstery nails which were composed of other than two or more pieces of iron or steel duty was levied at the rate of 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for. It is claimed that all of said articles are properly dutiable at the rate of six-tenths of 1 cent per pound or at nine-tenths of 1 cent per pound under the provision in said paragraph 331 for tacks not specially provided for, the rate on such tacks having been raised from six-tenths to nine-tenths of 1 cent per pound by virtue of said Presidential proclamation (T. D. 46051).

Samples of the imported merchandise were admitted in evidence as Collective Exhibit 1, and, in addition, the plaintiffs offered in evidence the testimony of a single witness, Louis H. Arens. No evidence was offered by the Government.

The said witness testified that he had been an importer of upholstery tacks, thumbtacks, and chair glides since 1925; that all of the merchandise covered by the various protests before the court was of the same type, except as to differences in length of shank, diameter, and the design and composition of the head; that he had sold similar merchandise on and immediately prior to June 17, 1930, in every part of the United States where furniture is made; that at or prior

to said date the term upholstery tacks had a definite and uniform meaning in the United States; that it embraced merchandise consisting of two pieces of metal connected together and used to cover fabric on furniture frames; that the merchandise which was the subject of these protests came within said meaning; that he had often used such merchandise himself and had seen it used in various furniture factories; that previous to the passage of the Tariff Act of 1930 such merchandise was classified for duty as upholstery tacks at the rate of six-tenths of 1 cent per pound; that since 1930 such merchandise with iron heads was classified as upholsterers' nails; that similar merchandise with brass heads was used for the same purpose as that composed of two or more pieces of iron or steel, and was also bought under the name of upholstery tacks.

On cross-examination the witness testified in part as follows:

X Q. In 1932, how did he (the collector) pass your merchandise?—A. This steel head nail was assessed, and called "upholstery nails", and assessed under paragraph 331, and the brass head nails were assessed at 45 per cent under paragraph 397.

X Q. That was in 1932?—A. Yes.

X Q. In other words, since the enactment of the Tariff Act of 1930, he has been passing those nails with "brass" heads under paragraph 397, at 45 per cent, and those with "brassed" heads, under paragraph 331, as upholstery nails?—A. I have to correct myself. The appraiser will affirm that, between the years 1930 and 1933, the Customs continued to assess the brass headed tacks under paragraph 331, and only as manufactures of tacks, not specially provided for—the brass ones, and the steel ones were passed under the same paragraph, but at 4½ cents.

\*     \*     \*     \*     \*     \*     \*

X Q. Have you ever seen merchandise similar to Collective Exhibit 1 used on the inside to keep the webbing together?—A. No.

\*     \*     \*     \*     \*     \*     \*

X Q. You had a previous case before this court, didn't you?—A. I think it was the same.

\*     \*     \*     \*     \*     \*     \*

X Q. In that case the court already decided it? You have been so informed; is that right?—A. Yes.

At this point counsel for the Government moved that the record in the case of *L. Arens* v. *United States*, T. D. 49516, 73 Treas. Dec. 670, be incorporated herein, and it was so incorporated over objection by counsel for the plaintiffs by the trial judge on the ground that the merchandise was identical with that in the cited case and the plaintiffs and the issue involved were the same. An exception was allowed the plaintiffs.

Upon this record counsel for the plaintiffs in their brief filed herein contend that their claim should be sustained on the ground of long-

continued administrative practice previous to and at the time of the enactment of the Tariff Act of 1930, and they cite numerous cases in support of their contention. However, in our opinion none of said cases has any application to the facts in the case at bar.

The Tariff Act of 1922, under which similar merchandise was assessed with duty under paragraph 331 as tacks not specially provided for, contained no provision for upholsterers' nails as does the 1930 law; and it is obvious that in framing the latter act the Congress intended to differentiate in the new paragraph 331 between "upholsterers' nails * * * of two or more pieces of iron or steel" and "tacks * * * not specially provided for," the former bearing the rate of 3 cents per pound and the latter the rate of six-tenths of 1 cent per pound. Hence, the practice of the customs officials under the Tariff Act of 1922 which may have continued for a short time after the enactment of the Tariff Act of 1930 until the issuance of an order by the Treasury Department in obedience to the new provision in paragraph 331, has no bearing whatever on the question here in issue.

The only other claim advanced by the plaintiffs is that the testimony of the single witness Arens has established a commercial designation of the merchandise at bar as upholsters' tacks.

In *United States* v. *Oberle*, 1 Ct. Cust. Appls. 527, T. D. 31545, the United States Court of Customs Appeals held that the testimony of one witness was insufficient to prove commercial designation.

Finally, we hold that the trial judge was justified on motion of counsel for the Government in incorporating the record, even over the objection of counsel for the plaintiffs, in the case of *L. Arens* v. *United States*, T. D. 49516, 73 Treas. Dec. 670, wherein this court on precisely the same issue involved herein and identical upholsterers' nails held that, under the Tariff Act of 1930, said nails, composed of two or more pieces of iron or steel, were properly dutiable at the rate of 3 or 4½ cents per pound, as the case may be, under the *eo nomine* provision therefor in paragraph 331 and the Presidential proclamation, T. D. 46051; and that said nails with brass heads and iron or steel shanks were properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of said act as manufactures of metal not specially provided for.

Following the cited case we therefore hold that the merchandise involved herein was properly classified by the collector, which classification is hereby affirmed. All claims of the plaintiffs are therefore overruled and judgment will be rendered accordingly.